**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Warren B., | ) |
| | ) |
| Plaintiff, | ) |
| | )    Case No.: 25-cv-50290 |
| v. | ) |
| | )    Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Warren B., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A.       Procedural History**

On October 11, 2022, Warren B. ("Plaintiff") filed an application for supplemental security income, alleging disability beginning September 22, 2022. R. 17. The Social Security Administration denied his application initially on September 20, 2023, and upon reconsideration on April 2, 2024. *Id.* Plaintiff filed a written request for a hearing and on August 22, 2024, a telephonic hearing was held by Administrative Law Judge ("ALJ") Lee Lewin where Plaintiff appeared, testified, and was represented by counsel. *Id.* Thomas Dunleavy, an impartial vocational expert ("VE") also appeared and testified. *Id.*

**B.  The ALJ's Decision**

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 11, 2022, the application date. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy in the bilateral lower extremities, gastroparesis, and diabetic retinopathy; glaucoma and cataracts; degenerative disc disease in the lumbar spine with radiculopathy; Charcot arthropathy in the right foot; adhesive capsulitis of the left shoulder; asthma; adjustment disorder with anxiety; and marijuana use disorder. R. 20. At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

Before step four, the ALJ found that Plaintiff had a mental residual functional capacity ("RFC") to perform sedentary work with the following limitations: can occasionally use ladders, ropes, scaffolds, ramps, and stairs; can occasionally stoop, kneel, crouch, crawl and balance; can occasionally reach overhead with the dominant left hand; must avoid concentrated exposure to vibration and hazards including dangerous moving machinery and unprotected heights; no commercial driving; must avoid concentrated exposure to pulmonary irritants; can perform jobs requiring frequent near visual acuity; can understand, remember, and carry out simple instructions with sufficient persistence, concentration, or pace to timely and appropriately complete job duties; no paced production rate as on assembly line or strict hourly quota requirements but can meet end of day requirements; can adapt to routine workplace changes with occasional contact with coworkers, supervisors, and the general public but no problem-solving tasks with the general public. R. 23.

At step four, the ALJ found that Plaintiff had no past relevant work. R. 28. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including fast food order clerk and cashier. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since October 11, 2022, the date the application was filed. R. 29.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (citation modified) (quoting *Biestek*, 587 U.S. at 103). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that remand is warranted because the ALJ's RFC did not contain a sufficient logical bridge in forgoing limitations related to his diabetes and adhesive capsulitis. For the reasons set forth below, the Court finds that the ALJ did not err in making her RFC determination. Accordingly, the Court affirms the Commissioner's decision.

A claimant's RFC is the maximum work he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct [her] own RFC finding without a proper medical ground and must explain how [she] has reached [her] conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (citation modified). Here, the ALJ's analysis assures the Court that she considered the totality of Plaintiff's limitations.

### Diabetes-Related Limitations

Plaintiff contends that the ALJ rejected diabetes-related limitations based on an unsupported credibility finding. Plaintiff specifies that the ALJ improperly drew a negative inference from his noncompliance with treatment because she failed to assess possible reasons for noncompliance as required by Social Security Rulings ("SSR") 18-3p and 16-3p. As an initial matter, the Court notes that SSR 18-3p is only applicable to claims where an ALJ first finds that "the individual would otherwise be entitled to benefits based on disability." *See* SSR 18-3p, 2018 WL 4945641, at *2 (Oct. 2, 2018). Because the ALJ did not make such a finding in this case, SSR 18-3p does not apply. In contrast, SSR 16-3p applies to an ALJ's subjective symptom analysis and

is therefore relevant to the ALJ's credibility determination in this case. However, the Court finds that the ALJ did not err in making her credibility determination.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ must "determine whether the [claimant] has a medically determinable impairment . . . that could reasonably be expected to produce the [claimant's] alleged symptoms." *Id.* at *3. Next, the ALJ must evaluate the intensity and persistence of the alleged symptoms to "determine the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's subjective symptom allegations, an ALJ may consider a claimant's course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. Where a claimant "fails to follow prescribed treatment that might improve symptoms," an ALJ may find that "the alleged intensity and persistence of [the claimant's] symptoms are inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9. However, an ALJ will not make this finding without first "considering possible reasons [a claimant] may not comply with treatment." *Id.*; *see also Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) ("[A]n ALJ must consider possible reasons for a failure to seek treatment.") (citation omitted).

Ultimately, "[a]s long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished). Here, the Court finds that the ALJ supported her credibility determination with specific reasons supported by the record.

In this case, Plaintiff testified to an extensive history of uncontrolled diabetes that caused neuropathy, retinopathy, gastroparesis, asthma, and lower back pain. R. 39. However, the ALJ noted Plaintiff's noncompliance with treatment and found that the record did not support the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms. R. 26. Specifically, the ALJ noted:

> While the claimant's diabetes mellitus has been noted as uncontrolled, the claimant has been noncompliant with treatment, forgetting many doses of insulin, but also not following diet such as counting carbohydrates, and indicating that "he does not want to moving forward" (13F/14, 23). He has been noted to have hyperglycemia due to not adhering to therapy, and hemoglobin A1c levels have been consistently above 9.0 (see C13F/23), but without hypoglycemia in many years (C9F/12).

*Id.*

Plaintiff first objects to this finding on the basis that poor glycemic control does not necessarily indicate noncompliance with treatment but instead may be attributed to the intractable nature of his diabetic condition. [20], p. 6. However, medical appointments, some of which were cited by the ALJ, indicated that Plaintiff's blood sugar levels were caused by departing from his recommended diet. For example, the ALJ cited a medical appointment from February 9, 2024, in

4

which Plaintiff was assessed with hyperglycemia due to nonadherence to therapy. R. 26 (citing R. 890). This appointment was consistent with a previous appointment on October 25, 2022, during which Plaintiff's inappropriate and inconsistent intake of carbohydrates was noted, and it was stressed to him that he must avoid sugary soft drinks. R. 439. Accordingly, the ALJ's finding of noncompliance with treatment was appropriate as it was supported by the record.

Next, Plaintiff argues that even assuming some degree of noncompliance with treatment, the ALJ did not consider potential reasons for nonadherence, such as the impact of limited health literacy on following a complex treatment regimen, his consumption of sugary soft drinks was motivated by a fear of hypoglycemia, continued efforts to comply were reflected by escalating treatment, or the impact of poor mental health on his memory, concentration, and executive functioning. [20], p. 6-9. However, the ALJ's broader RFC discussion demonstrates that she considered possible reasons why Plaintiff may not have complied with his treatment regimen. For example, regarding Plaintiff's health literacy, the ALJ cited notes from a March 12, 2024, appointment which indicated that a nutrition education plan was discussed with a Diabetic Educator and that Plaintiff was able to identify many carbohydrate foods, including foods that would not spike blood glucose levels. R. 26 (citing R. 881); 883. The ALJ also considered Plaintiff's concern regarding blood glucose levels and cited an examination in which Plaintiff acknowledged he did not have hypoglycemia but admitted he nevertheless drank sugary soft drinks to avoid low blood sugar. R. 25 (citing R. 809). Finally, the ALJ considered medical records that demonstrated Plaintiff's willingness to escalate his treatment plan by using an insulin pump and a blood glucose monitor. R. 24-26 (citing R. 880); 881.

As to his mental health history, Plaintiff contends that his symptoms of "sadness, worry, irritability, insomnia, poor concentration, and restlessness," directly interfered with the memory, concentration, and executive functioning necessary for managing a complex treatment regimen. [20], p. 8. However, earlier in her decision the ALJ determined that Plaintiff had a mild limitation in understanding, remembering, or applying information and a moderate limitation in concentrating, persisting, or maintaining pace. R. 22. The ALJ further noted that Plaintiff did not have significant issues obtaining or using information, and that he nevertheless had a "useful ability to focus attention and remain on task." *Id.* The ALJ later noted that while the record supported "below average working memory, some tangential thought process, and anxious mood," it also indicated that Plaintiff's symptoms were reasonably managed through medicine and counselling. R. 27.

The Court notes that while the ALJ appeared to draw a negative inference based on Plaintiff's noncompliance with treatment, she nevertheless constructed an RFC that addressed his diabetes-related limitations, to the extent they were supported by the record. As stated above, Plaintiff alleged neuropathy, retinopathy, gastroparesis, asthma, and lower back pain and attributed this to uncontrolled diabetes. The RFC addresses Plaintiff's neuropathy and limited vision by providing that he is to avoid concentrated exposure to vibration and hazards, including commercial driving. R. 27. Further addressing his vision difficulties, the RFC limits Plaintiff to jobs that require frequent near visual acuity. R. 23. Moreover, the RFC addresses Plaintiff's asthma in stating that he must avoid concentrated exposure to pulmonary irritants and addresses his lower back pain by limiting him to sedentary work. R. 27.

5

In summary, in light of medical records repeatedly noting Plaintiff's dietary noncompliance and the broader RFC discussion, the Court is assured that the ALJ appropriately considered factors that may have impacted Plaintiff's adherence to treatment. Accordingly, the Court finds that the ALJ's credibility finding based on diabetes-related limitations was sufficiently supported and not patently wrong. *Grotts*, 27 F.4th at 1279.

### Reaching Limitations

Next, Plaintiff challenges the postural-manipulative limitations contained in the RFC on the basis that the ALJ failed to build a logical bridge in finding that the adhesive capsulitis in his left shoulder only limited him to occasional overhead reaching. Plaintiff contends that this constituted reversible error because the record supported global reaching restrictions, and such a finding would have precluded all competitive employment. The Court finds that the ALJ supported the reaching limitations in the RFC with substantial evidence.

In finding that Plaintiff was limited to occasional reaching overhead with his left hand, the ALJ relied on Plaintiff's testimony, medical records, and state agency consultant opinions. In her decision, the ALJ noted that Plaintiff "testified to pain in the left arm/shoulder on and off almost daily," and had "problems lifting and reaching in front and overhead with the left upper extremity." R. 24. During the hearing, Plaintiff testified that he could reach in front with his left shoulder, but not all the way, and did not have any problem using his right shoulder. R. 55. The ALJ additionally pointed to assessment notes provided by consultative examiners that indicated full "5/5 power with normal tone and muscle mass in all four extremities," including moderately reduced range of motion in both shoulders. R. 25 (citing R. 771-72). The ALJ noted that Plaintiff's left shoulder was more restricted than the right, with 110 degrees flexion, 55 degrees internal rotation, and 50 degrees external rotation. *Id.* (citing R. 771). Finally, the ALJ found partially persuasive[1] the opinions of state agency consultants, Dr. Myron Watkins and Dr. Vittal Chapa, and adopted their finding that Plaintiff had no limitations in reaching in front or laterally. R. 141, 151. However, the ALJ departed from their finding that Plaintiff was limited to occasional overhead reaching bilaterally, finding the limitation applicable only[2] to the left shoulder. R. 23-24, 141, 151.

Contrary to Plaintiff's contention, the ALJ's RFC discussion provides sufficient explanation for rejecting limits on reaching in all directions with his left arm. The ALJ weighed the evidence, which included Plaintiff's testimony, medical records indicating full strength but reduced range of motion in the left shoulder, and medical opinions that did not find lateral reaching restrictions necessary. To the extent that Plaintiff argues that the record supported greater or different restrictions, this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the [ALJ]." *Deborah M.*, 994 F.3d at 788 (internal quotations and citation omitted). Consequentially, the only question before this Court is whether the ALJ supported her RFC finding with substantial evidence. Here, the Court finds that

---

[1] The ALJ found the state agency opinions only partially persuasive because evidence presented at the hearing level, particularly related to Plaintiff's antalgic gait and asthma, supported greater limitations. R. 27.

[2] Although the ALJ's decision does not explicitly state why she only provided an overhead reaching limitation for the left shoulder, it appears that this was due to Plaintiff's testimony that he did not have issues using his right shoulder and the VE's testimony that providing the overhead limitation only for the left shoulder would not change his assessment on the number of occupations available in the national economy. R. 55, 69.

the ALJ did enough to provide a logical bridge between the evidence and her conclusion by adequately reviewing the record and making reasonable conclusions based on the evidence. *Warnell*, 97 F.4th at 1054 (citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: July 10, 2026                                    ENTER:

*Margaret J. Schneider*
_____
United States Magistrate Judge